[Civ. No. 3503. Second Appellate District, Division One.—July 21, 1921.]

## WILLIAM SHANK, Respondent, v. P. C. BLACKBURN et al., Appellants.

[1] CLAIM AND DELIVERY — MORTGAGED PERSONALTY—PLEADING—DEMAND AND POSSESSION.—In an action by the assignee of a chattel mortgage to recover possession of the property for the purposes of sale and payment of the debt, it is necessary that the complaint allege a demand for delivery during the time the defendants held possession, but such defect is cured by averments in the answer amounting to an admission of possession at the time of demand.

[2] APPEAL — FINDINGS — CONSTRUCTION. — Where from facts found other facts may be inferred which will support the judgment, such inference will be deemed to have been made by the trial court, and upon appeal the court will not draw from such facts any inference of fact to the contrary.

[3] CLAIM AND DELIVERY—DISCHARGE OF MORTGAGE—TRANSACTION BETWEEN ASSIGNEE AND MORTGAGEE—FINDINGS—CONFLICT OF EVIDENCE—APPEAL.—Where in an action by the assignee of a chattel mortgage to recover possession of the property the evidence is in substantial conflict as to the contention that an alleged transaction between the plaintiff and the mortgagee was one of payment of the debt and discharge of the mortgage, the finding will not be disturbed on appeal.

[4] ID.—ALTERNATIVE JUDGMENT—AMOUNT.—In an action by the assignee of a chattel mortgage to recover possession of the prop-

erty for the purposes of sale and payment of the debt, an alter-
native judgment in excess of the amount of the debt is unwar-
ranted.

APPEAL from a judgment of the Superior Court of Los
Angeles County. L. H. Valentine, Judge. Affirmed.

The facts are stated in the opinion of the court.

Elmer I. Moody and Porter C. Blackburn for Appellants.

Frank C. Hill and George S. Hupp for Respondent.

CONREY, P. J.—On June 10, 1918, Minnie Justis, to
secure the payment of a debt of $1,100 with interest, etc.,
executed to Jacob Swallow a chattel mortgage on certain
furniture and other personal property in the city of Los
Angeles. On September 13, 1918, this mortgage was trans-
ferred to Lola E. Kilfoil, who remained the owner thereof
until March 5, 1919. On August 7, 1918, Mrs. Justis trans-
ferred the mortgaged property to the defendant P. C. Black-
burn. The note given by Justis, which the mortgage was to
secure, was payable on or before December 10, 1918. Con-
currently with the transfer to Blackburn, Mrs. Justis exe-
cuted to him an agreement promising to pay off and satisfy
the mortgage within ninety days from that date, August 7,
1918.

On the fifth day of March, 1919, there was pending an
action by Kilfoil, as plaintiff, against Justis, as defendant,
for the foreclosure of the chattel mortgage, in which action
the default of Justis had been entered. On said March 5,
1919, William Shank paid over to Mrs. Kilfoil the amount
of the mortgage indebtedness and received from her an
assignment in due form of said mortgage. Thereupon the
foreclosure action was dismissed and the assignment was
recorded.

On the eighth day of September, 1919, both principal and
interest of the mortgage debt being wholly unpaid, Shank
commenced this action. The case was tried upon the
amended complaint filed December 8, 1919, and the answer
thereto. The complaint shows the interest of Shank in the
property by reason of said chattel mortgage including the
agreement contained in the mortgage providing that in case

of nonpayment, the mortgagee might take possession of the property in order to sell the same and from the proceeds pay the debt. Aside from issues raised by denial, the principal defense pleaded is to the effect that the plaintiff did not in fact purchase the mortgage, but that, on the contrary, the plaintiff, with full knowledge of the contract obligation of Justis to Blackburn, first procured extensions of time from Kilfoil on behalf of Justis, and then actually paid the mortgage debt under and pursuant to an arrangement alleged to have been made between the plaintiff and Justis whereby the plaintiff agreed to furnish to her financial assistance in the matter of payment of said mortgage debt. Judgment having been entered in favor of the plaintiff, the defendants appeal therefrom.

[1] Taking up appellants' points in our own order, the first is that the court erred in overruling the demurrer of defendants to the amended complaint. It is contended that the complaint did not state a cause of action in that there is no allegation therein that demand for possession was made by the plaintiff upon the defendants while and during the time they held possession of the property. The rule is that such demand must be alleged to have been made at a time when the defendants held possession of the demanded property. (*Home Payment Jewelry Co.* v. *Smith*, 24 Cal. App. 486, [141 Pac. 933].) The complaint is defective in the particular mentioned, but that defect was cured by the answer. The complaint alleged that "On the —— day of September, 1919, plaintiff demanded of the defendants possession of said goods," etc. In their answer the defendants supplemented their denial of this allegation by the statement "but defendants admit that they now retain possession, and on the —— day of September, 1919, defendants had possession of certain goods and chattels located at the place hereinbefore described." Further on in the answer, in connection with their pleading of the agreement made by Mrs. Justis with Blackburn, the defendants allege that "on the said seventh day of August, 1918, the said Minnie Justis, in order to deliver said personal property to defendant, P. C. Blackburn, free and clear of all encumbrances," etc., executed the stated agreement. We think that these contents of the answer amount to an admission that at the time when demand was made, defendants had possession of the

demanded property. This fact being admitted, there is no merit in the claim that the judgment should be reversed on account of the omission to plead the fact in the complaint, or on account of the omission of the court to make a finding of the fact so admitted.

It is claimed that the court erred in denying defendants' motion to strike from the complaint certain allegations referring to the rental value of the mortgaged property and relating to plaintiff's claim for attorney fees in this action. The motion should have been granted. The error, however, is without injury to appellants since the judgment made no allowance to plaintiff based on either of those elements of the case.

Appellants claim that the transaction and the circumstances as proved clearly indicate that the advancement of the money by respondent was, in legal effect, payment of the mortgage debt to Kilfoil, and that in consequence thereof the debt was discharged. The findings affirm that no part of said mortgage debt has been paid. They further state that the plaintiff did not agree, for or on behalf of Mrs. Justis, to pay off, liquidate, or extinguish said promissory note or chattel mortgage, or said mortgage indebtedness, or any part thereof; that the plaintiff did not pay, satisfy, or discharge the said indebtedness, or any part thereof; that at the time of the making of said assignment of said chattel mortgage to plaintiff by Mrs. Kilfoil the plaintiff owned or had a grant deed to the property and premises wherein said personal property was located, and that he purchased the said note and chattel mortgage and took the assignment thereof for the purpose of protecting his interest, and for his own interests alone, and not otherwise.

[2] It is suggested by appellants that these findings are insufficient to support the judgment because they omit to determine the facts alleged in their affirmative defense wherein the transactions between Justis and Blackburn, between Justis and Shank, and between Shank and Kilfoil were set forth in aid of the assertion of defendants that notwithstanding the formal execution of the instrument of assignment from Kilfoil to plaintiff, the transaction was in reality one of payment of the debt and satisfaction of the mortgage. But the facts as found by the court necessarily imply that the above-mentioned allegations of the answer

were not true. This being so, the judgment will not be reversed on account of the absence of findings thus omitted. "The findings of the trial court are to receive such a construction as will uphold rather than defeat its judgment thereon, and whenever, from the facts found by it, other facts may be inferred which will support the judgment, such inference will be deemed to have been made by the trial court, and upon an appeal from that judgment, this court will not draw from those facts any inference of fact contrary to that which may have been drawn by the trial court for the purpose of rendering such judgment." (*Breeze* v. *Brooks*, 97 Cal. 72, 77, [22 L. R. A. 257, 31 Pac. 742]; *Tower* v. *Wilson*, 45 Cal. App. 123, [188 Pac. 87, 91].)

[3] Concerning the contention that the findings were not justified by the evidence, it is sufficient to reply that the testimony of the plaintiff definitely contradicts the essential evidentiary facts introduced on behalf of the defendants relating to the transactions in question, and definitely affirms his purchase of the mortgage in his own behalf and for his own benefit. This, therefore, is the usual instance of conflicting evidence which the court on appeal will not attempt to weigh or balance.

Appellant Blackburn presents the proposition that when he accepted the mortgaged property subject to the lien thereon, without assuming or agreeing to pay the same, he became a surety for the payment of the mortgage debt; that as such surety he has been released from the mortgage on account of certain stated acts of the parties, and especially that extensions of time for payment of the mortgage debt were made and obtained without Blackburn's consent. In considering this contention, let it be assumed that the evidence fully establishes Blackburn's purchase of the property from Mrs. Justis in the manner stated in his answer, and the execution by Mrs. Justis of her agreement with Blackburn that she would pay and satisfy said mortgage; and that the court should have found these facts whereby it would have been established that defendant Blackburn, as owner of the property, stood in the position of a surety of a debtor with relation to the property assigned to him, although he was not personally bound to pay the debt. And let it be conceded that he would then be entitled to be exonerated "except so far as he may be indemnified by the

principal, if by any act of the creditor, without the consent
of the guarantor, the original obligation of the principal is
altered in any respect, or the remedies or rights of the credi-
tor against the principal, in respect thereto, in any way im-
paired or suspended.'' (Civ. Code, sec. 2819.) ''While
mere delay on the part of a creditor to proceed against the
principal, or to enforce any other remedy, does not exoner-
ate a guarantor (Civ. Code, sec. 2823), it is well settled that
if he grants the debtor an extension of time within which to
pay, under such circumstances as to impair or suspend his
right to proceed against the debtor in accord with the terms
of the original obligation, we have such an alteration of the
original obligation as will release the surety, if the same
is without his consent.'' (*Bridge* v. *Connecticut Mut. Life
Ins. Co.*, 167 Cal. 774, 782, [141 Pac. 375, 379].) The ques-
tion then is whether or not the evidence relied upon by
appellant, assuming that the court had found in accordance
therewith, established an extension of time of the debtor,
Mrs. Justis, to pay the mortgage debt, under such circum-
stances as to impair or suspend the right of Kilfoil to pro-
ceed to judgment in the foreclosure action. If this be an-
swered in the affirmative, Shank in taking the assignment
did not place himself in any better situation than that of
Kilfoil.

It appears from this evidence that Mrs. Justis had been
injured in an accident of some kind and was in a hospital.
It does not appear that Shank had obligated himself to pay
this debt for Mrs. Justis, but according to testimony intro-
duced by the defendant, Shank told the defendant that he
had arranged to manage her affairs during her incapacity,
and that she had made him her agent. Blackburn testified
that on December 26th Shank told him that he would pay
the debt rather than see Mrs. Justis suffer the mental strain
of having a suit pending against her and that he was going
to Kilfoil to get an extension, if possible, of this mortgage
and get them to stay further proceedings in the case until
he had an opportunity to pay the mortgage. Blackburn
had endeavored to obtain an extension from Kilfoil (hus-
band of Mrs. Kilfoil), and failed. Kilfoil testified that he
asked Shank if he wanted to take up the mortgage, to which
Shank replied that it would not be necessary because things
were going to be adjusted in a few days. Thereupon Kilfoil

said he would let it ride a while. He said that Shank said that he was representing Mrs. Justis. Later, at the request of Shank, Kilfoil promised to continue the matter until February 10th. The debt being not paid at that time, Kilfoil caused the default of Mrs. Justis to be entered in the foreclosure action. According to the testimony of Kilfoil, when that promise was made Shank said, ''I will see that you do not lose this if I take it up myself''; to which Kilfoil replied, ''I don't care who takes it up; I am going to get the money out of this mortgage.'' After the default had been entered, arrangements were made with Shank to grant an extension to March 5th. Kilfoil testified that Shank said he would take the thing up himself. The extension was allowed on account of delay required in getting certificates of title on some property which Shank was to turn over to Kilfoil as security on a note that Shank was to give in lieu of cash as consideration for the Justis note and mortgage. On March 5th, Kilfoil received, in some form acceptable to him, the amount of the debt due, and executed an assignment of the note and mortgage to Shank. As we have seen, the court found that this was by way of purchase and not as a payment of the mortgage.

The facts above stated, although they show two postponements of proceedings in the prosecution of the foreclosure action, were not sufficient to have warranted the court in finding that there were extensions of time of maturity of the debt, or any extensions of time for payment, under such circumstances as to impair or suspend the right of Mrs. Kilfoil ''to proceed against the debtor in accord with the terms of the original obligation.'' They were extensions without consideration and could have been repudiated at any moment. Moreover, it appears quite plainly from the evidence of Blackburn that he was kept posted upon the progress of these negotiations, and it may fairly be inferred that he desired that such extensions be granted. And as we have seen, the court found that it was untrue that the plaintiff agreed, for or on behalf of Mrs. Justis, to pay off, liquidate, or extinguish said note or mortgage. As to that particular issue, this finding meets and covers the question of fact as pleaded by the defendant.

[4] Finally, it is contended that the court erred in entering judgment for the possession of the property, with an

alternative judgment in the sum of $1,499 in the event that a delivery of said personal property to the plaintiff could not be had. This point is well taken, since the amount awarded is in excess of the amount of the mortgage debt at the time of entry of judgment. The rule is as stated in *Keiser* v. *Levering*, 29 Cal. App. 41, [154 Pac. 281] : ''Since in the present case the plaintiff's right to have possession of the described property is only claimed for the purpose of satisfying his claims for an indebtedness unpaid to him, and since no special damages are either alleged or proved, it is clear that the value of the property to him cannot exceed the amount of the indebtedness unpaid.'' But the court found as a fact that no part of the principal or interest of the mortgage debt has been paid. This amount is ascertainable by calculation. We have made a computation and find that the amount of principal and interest of the note, compounding the interest semi-annually as provided in the note, was $1,250.57 on the date of entry of the judgment. The judgment is hereby modified as of the date of entry thereof by striking out the words ''Fourteen Hundred Ninety-nine ($1499.00) dollars,'' and substituting therefor the words ''Twelve Hundred Fifty and 57/100ths Dollars ($1250.57).''

As thus amended, the judgment is affirmed.

Shaw, J., and James, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on August 11, 1921, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 19, 1921.

All the Justices concurred, except Shaw, J., who was absent.